UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
JOSHUA RAMUS,                                               :
                                                            :
                        Plaintiff,                          :
                                                            :
            -v-                                             :            23 Civ. 1770 (JPC)
                                                            :
GRAHAM R. BRUWER and GERARD E.                              :            OPINION AND ORDER
METOYER,                                                    :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------ X

JOHN P. CRONAN, United States District Judge:

      This dispute arises from a considerably delayed and apparently still uncompleted renovation project at Plaintiff Joshua Ramus's cooperative apartment in Manhattan.  Ramus brings this action against Defendants Graham R. Bruwer and Gerard E. Metoyer, two employees of the company that Ramus retained as the general contractor to perform the work.  After both Defendants failed to timely answer the Complaint, Ramus moved for a default judgment.  In opposing default judgment, Defendants purport to also cross-move for the Court to compel mediation and arbitration, citing the terms of the agreement for the renovation project.  For reasons that follow, Ramus's motion for a default judgment against Defendants is denied, the certificates of default that had been issued for Defendants are vacated, and Defendants' cross-motion to compel is denied without prejudice.

## I. Background

### A. Facts[1]

Ramus is the sole owner of the shares allocated to the cooperative apartment located at 100 Hudson Street, Apartment 2E, in New York, New York (the "Apartment"). Complaint ¶ 8. Bulson Management, LLC ("Bulson") was a part of a bi-coastal construction business with offices in New York City and Los Angeles. *Id.* ¶ 6.[2] On or about August 6, 2020, Ramus and Bulson entered into an agreement, signed by Bruwer as Bulson's Chief Executive Officer ("CEO"), pursuant to which Bulson would serve as the general contractor for a complete renovation of the Apartment. *Id.* ¶¶ 9, 11, Exh. A ("Agreement"). At the time, Bruwer was Bulson's sole member and CEO. *Id.* ¶¶ 10-11; Bruwer Decl. ¶¶ 2-3. Ramus alleges that Metoyer was Bulson's Comptroller, Complaint ¶ 12, yet Metoyer claims that he was only a part-time bookkeeper at Bulson, Metoyer Decl. ¶ 2. *But see* Complaint, Exh. B at 2 (Partial Lien Waiver signed by "Eldridge Girard Metoyer" as "Comptroller" for "Bulson Management LLC").

Ramus contends that, although the project began on October 20, 2020, and was supposed to be substantially completed by July 13, 2021, the majority of the work still remained as of February 2023. Complaint ¶¶ 16-17, 42. According to Ramus, Bruwer initially blamed the delays on the COVID-19 pandemic, inflation, and supply chain issues, and then on the refusal of Bulson's subcontractors to honor the terms of their contracts. Ramus Decl. ¶¶ 33, 35. The project apparently had an initial contract price of $1,275,811.00, which was later increased to $1,388,078.00. *Id.*

---

[1] The following facts are based on the allegations in the Complaint and the exhibits attached thereto, *see* Dkt. 1 ("Complaint"), and the declarations along with attached exhibits submitted by the parties, *see* Dkts. 23 ("Ramus Decl."), 24 ("Akselrod Decl."), 34-1 ("Bruwer Decl."), 34-2 ("Metoyer Decl."), 35-6 ("Akselrod Reply Decl."). The information contained in these materials is relied upon only for purposes of resolving Ramus's motion for a default judgment. Unless otherwise noted, the facts relevant to the default judgment motion largely are not in dispute.

[2] According to Bruwer, Bulson is no longer in business. Bruwer Decl. ¶ 4.

¶¶ 15-16.  The parties agree that Ramus made payments for the project to Bulson totaling $972,202.97.  *Id.* ¶ 28; Bruwer Decl. ¶ 22; Metoyer Decl. ¶ 27; *see also* Ramus Decl. ¶ 27 (listing twelve payments Ramus made to Bulson between November 26, 2019 and June 22, 2022).

Ramus further contends that, on January 19, 2023, Bruwer sent him an email "abandoning the Project and indicating his unwillingness to even communicate with [Ramus] going forward." Complaint ¶¶ 57-58; Ramus Decl. ¶¶ 45-46, Exh. J.  Ramus claims that when he then reached out to Bulson's subcontractors, he learned that Defendants had repeatedly and grossly exaggerated monies supposedly due or actually paid to them.  Complaint ¶¶ 65-106.  On January 20, 2023 and February 7, 2023, Ramus's counsel asked Defendants to produce books and records of the project, but counsel claims that these requests were ignored.  Akselrod Decl. ¶¶ 3-6, Exhs. A, B.

In declarations submitted in opposition to Ramus's default judgment motion, Bruwer and Metoyer both deny, among other things, that they "st[ole], embezzle[d], or otherwise improperly benefit[ed] from any of Plaintiff's money," and maintain that "Bulson paid each subcontract[or] what they were supposed to be paid for the work they had put into this job."  Bruwer Decl. ¶¶ 6-7; Metoyer Decl. ¶¶ 8-9.  Bruwer and Metoyer also fault Ramus for "fail[ing] to make decisions[,] which made it impossible to complete aspects of the job," Bruwer Decl. ¶ 14; Metoyer Decl. ¶ 20, with Bruwer pointing to the example of Ramus taking years "to approve shop drawings for the project" thereby preventing the work from being "scheduled or sequenced," Bruwer Decl. ¶ 14.[3] Both Bruwer and Metoyer also contend that Ramus himself breached the Agreement by not making all payments due, suggesting that this led to the project not being completed:

> Per the contract, Plaintiff was to pay $1,386,698.00.  The amount Plaintiff had left to pay was $414,495.02.  The amount subcontractors were owed to complete the job was $394,571.02.  Thus, had Plaintiff not breached the contract, Bulson would

---

[3] On this point, Metoyer's declaration states: "Plaintiff failed to make decisions which made it impossible to complete aspects of the job.  For example [NEED TO INSERT SPECIFIC EXAMPLES HERE]."  Metoyer Decl. ¶ 20.  Counsel is strongly urged to take greater care when filing documents with the Court.

have had enough to pay the subcontractors.

Bruwer Decl. ¶ 23; Metoyer Decl. ¶ 28.  Lastly, both declarants state that they "are in the process of producing books and records under Article 3-A of the New York Lien Law."  Bruwer Decl. ¶ 24; Metoyer Decl. ¶ 29.

### B. Procedural History

Ramus commenced this action on March 1, 2023, by filing the Complaint.  Dkt. 1.  Invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), Ramus brings five causes of action.  In the first cause of action, he makes a demand for production of books and records under Article 3-A of New York Lien Law.  Complaint ¶¶ 120-128.  Ramus's second through fourth causes of action allege fraud, breach of fiduciary duty, and unjust enrichment, respectively, and seek at least $972,202.97 in damages, as well as punitive damages, interest, attorneys' fees, costs, and disbursements.  *Id.* ¶¶ 129-149.  And in the fifth cause of action, Ramus asks that his payments to Bulson be placed in a constructive trust.  *Id.* ¶¶ 150-156.[4]

Ramus filed affidavits reflecting service of the Summons and Complaint on Metoyer on March 6, 2023, and on Bruwer on March 13, 2023.  Dkts. 8-9.  As such, the deadlines for Metoyer and Bruwer to respond to the Complaint were March 27, 2023 and April 3, 2023, respectively.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  Shortly after neither Defendant responded by his deadline, on April 6, 2023, Ramus sought certificates of default for both Defendants, Dkts. 14-17, and the Clerk of the

---

[4] The Court notes that there is some disagreement as to whether a constructive trust is a viable cause of action or instead a remedy.  The Second Circuit has noted that New York courts have described a constructive trust "as an equitable remedy," *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215-16 (2d Cir. 2004) (quoting *Bertoni v. Catucci*, 498 N.Y.S.2d 902, 905 (3rd Dep't 1986)) (alteration removed), and a constructive trust claim has been dismissed because "[a] constructive trust is a remedy, not a cause of action, and is to be imposed only in the absence of an adequate remedy at law." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419-20 (S.D.N.Y. 2010) (internal question marks omitted); *accord I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524, 545 (S.D.N.Y. 2017) (finding that the plaintiffs abandoned their constructive trust claim but, "[i]n any event, a constructive trust is simply a remedy and is not a basis for a separate cause of action" (citations omitted)).

Court issued those certificates later that day, Dkts. 18-19.  On April 19, 2023, the Court set a schedule for Ramus to move for a default judgment against Defendants, Dkt. 20, and, pursuant to that Order, Ramus filed his motion with supporting papers on May 5, 2023, Dkts. 22-24, 25 ("Motion"), 27.  On May 18, 2023, less than two weeks after Ramus filed his motion, counsel for Defendants filed a notice of appearance. Dkt. 29.[5]  After the Court extended Defendants' deadline to oppose the default judgment motion and Ramus's deadline to reply, Defendants filed their opposition on June 27, 2023, Dkt. 34 ("Opposition"), and Ramus filed his reply on July 11, 2023, Dkt. 35 ("Reply").

## II. Discussion

### A.  Ramus's Motion for Default Judgment

When a party is in default, an opposition to a motion for default judgment can be treated as a motion to set aside an entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.  *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[O]pposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion."); *Gadre v. Hexanika, Inc.*, No. 21 Civ. 11221 (JPO), 2023 WL 2569882, at *1 (S.D.N.Y. Mar. 20, 2023) (citation omitted); *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 109 F.R.D. 692, 694 (S.D.N.Y. 1986).  Rule 55(c) provides that an entry of default may be set aside for good cause. Fed. R. Civ. P. 55(c).  In assessing whether there is "good cause," courts look to "(1) whether the default was willful; (2) whether setting aside

---

[5] That same day, Defendants' counsel submitted a letter to the Court requesting an extension of time to respond to the default judgment motion and explaining that he had contacted Ramus's counsel requesting that Ramus withdraw the default judgment motion and consent to an extension of time for Defendants to respond to the Complaint, yet Ramus's counsel refused.  Dkt. 30.  Later that day, Ramus's counsel filed a letter with the Court, confirming his refusal to withdraw the default judgment motion (notwithstanding the facts that counsel had appeared for Defendants and that the case was merely 2.5 months old at that point) but advising that Ramus would consent to a shorter extension for Defendants' opposition to the default judgment motion than the one being sought.  Dkt. 31.

the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Of these factors, willfulness carries the most weight. Though each factor is to be considered, a 'default should not be set aside when it is found to be willful.'" *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991)).

A court's discretion to vacate a default is "circumscribed" in scope as "a reflection of [the Second Circuit's] oft-stated preference for resolving disputes on the merits." *Enron Oil Corp.*, 10 F.3d at 95; *id.* at 96 ("[D]efaults are generally disfavored and are reserved for rare occasions . . . ."); *accord L. Offs. of Sanford F. Young P.C. v. Landow*, No. 19 Civ. 11048 (MKV), 2020 WL 2555253, at *2 (S.D.N.Y. May 20, 2020) ("The recognition that 'default judgment is the most severe sanction which the court may apply' frames the good cause analysis, resulting in a 'strong preference for resolving disputes on the merits.'" (citing *New York v. Green*, 420 F. 3d 99, 104 (2d Cir. 2005)). Thus, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96; *see also Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir. 1957) ("[G]eneral principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default."). For reasons that follow, the Court finds that there is good cause to vacate Defendants' default and thus denies Ramus's motion.

### 1. Willfulness of Defendants' Default

The question of whether Defendants' defaults were willful presents a somewhat close call, but in the ultimate analysis the Court does not find that Defendants engaged in such willful conduct to justify denying their fair day in court. To be willful, a failure to respond must be more than careless, negligent, or even grossly negligent. *See Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1993); *accord S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). "However, 'the court may find a default to have been willful where the conduct of counsel or the litigant was

egregious and was not satisfactorily explained,' such as when defendants 'failed [to respond], for untenable reasons, after defendants had "purposely evaded service for months," to answer the complaint.'" *Johnson v. New York Univ.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018) (quoting *McNulty*, 137 F.3d at 739), *aff'd*, 800 F. App'x 18 (2d Cir. 2020).  Thus, a finding of willfulness is appropriate where "there is evidence of bad faith" or where a defendant's default is the result of "egregious or deliberate conduct."  *Holland v. James*, No. 05 Civ. 5346 (KMW), 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting *Am. All. Ins. Co.*, 92 F.3d at 61).  When there is doubt as to the defaulting defendant's willfulness, courts generally resolve them in the defendant's favor.  *See Raheim v. New York City Health & Hosps. Corp.*, No. 96 Civ. 1045 (JFB), 2007 WL 2363010, at *4 (E.D.N.Y. Aug. 14, 2007) (citing *Enron Oil Corp.*, 10 F.3d at 98).

While Defendants failed to respond to the Complaint by their deadlines to do so, both have offered explanations for their delays in declarations submitted under penalty of perjury.  According to Bruwer, Ramus had "filed an arbitration against Bulson based on the same facts as this case," Bruwer Decl. ¶ 9, and Bruwer "did not understand that this matter was a separate matter from the arbitration," *id.* ¶ 10.  Similarly, both Bruwer and Metoyer state in their declarations that they "did not believe that this matter could proceed against [them] because [they] thought it had to be mediated and, if that did not resolve the matter, it had to be arbitrated."  Bruwer Decl. ¶ 11; Metoyer Decl. ¶ 16; *see also* Metoyer Decl. ¶ 15 ("I did not believe that I could be sued personally in this matter because I was not an owner, director, officer, or trustee of Bulson.").  These beliefs, while mistaken, were not without some degree of factual support.  As discussed below, the Agreement for the renovation project contains mandatory mediation and arbitration language.  *See* Agreement §§ 17.2, 17.3.  Further, as Ramus acknowledges, at that time Bruwer and Metoyer were served with the Summons and Complaint, Ramus had in fact commenced separate proceedings before the American Arbitration Association ("AAA") against Bulson.  Ramus Decl. at 2 n.1 ("The Agreement

contains a mediation and arbitration clause, which I have honored by commencing separate mediation and arbitration proceedings against Bulson."); Akselrod Decl. ¶¶ 8-11 (discussing Ramus's proceedings before the AAA, which Bulson commenced on March 1, 2023).   While undoubtedly it was unwise for both Defendants to have assumed, at least for a few weeks, that they could ignore this litigation, the mandatory mediation and arbitration provision in the Agreement and the ongoing proceedings that Ramus had commenced against Bulson before the AAA suggest that their brief default did not amount to the type of bad faith, or egregious or deliberate conduct required for a finding of willfulness in this context.

In addition, before long both Defendants took affirmative steps to respond in this litigation. Metoyer states in his declaration that he "contacted Plaintiff's counsel to enter into settlement discussions," and "believed [Plaintiff's counsel] would contact [Metoyer] rather than try to default [him]."   Metoyer Decl. ¶ 17.   Both Defendants further aver that when they received the Court's Order, presumably referring to the April 19, 2023 Order setting a default judgment briefing schedule, *see* Dkt. 20, they "tried to find an attorney" and, "[o]nce [they] were able to do that, [the attorney] responded to the Court's order and asked for an extension of time to respond to Plaintiff's default motion."   Bruwer Decl. ¶ 12; Metoyer Decl. ¶ 18.   Indeed, less than two weeks after Ramus filed his default judgment motion, counsel for Defendants appeared in this case, Dkt. 29, and requested an extension of time to respond to that motion, Dkt. 30.   And this occurred only about 2.5 months after this case was initiated.   The relatively brief period between Defendants' deadlines to respond to the Complaint and their appearances in this case and requests to vacate the notations of default counsels strongly against a finding of willfulness.   *See Courchevel 1850 LLC v. Rodriguez*, No. 17 Civ. 6311 (MKB), 2019 WL 2233828, at *1, 5 (E.D.N.Y. May 22, 2019) (finding that the defendants' filing of an affidavit in opposition to the plaintiff's motion for a default judgment "supports a finding that [the defendant]'s default was not willful because it evidences an

intention and attempt to defend against the action"); *Johnson*, 324 F.R.D. at 70 ("[T]he Second Circuit has found that a defendant's prompt application for a motion to set aside an entry of default suggests that the default was not willful." (citing *Enron Oil Corp.*, 10 F.3d at 98)); *Prestige Cap. Corp. v. Fuber LLC*, No. 16 Civ. 9577 (DAB), 2017 WL 2558803, at *3 (S.D.N.Y. June 5, 2017) (finding no willfulness where one week after the issuance of the certificate of default and one day after the plaintiff's request for a default judgment, the defendant's counsel appeared and moved to vacate the default, even though the defendant knew of the action and "could have responded with more immediacy upon becoming aware of the Complaint"); *Yours2u Ltd. v. Blue Phoenix Media Inc.*, No. 16 Civ. 3620 (DAB), 2017 WL 2562334, at *2 (S.D.N.Y. June 5, 2017) (concluding that even though the defendant's explanation was not "entirely satisfying," its notice of appearance and motion to vacate the default three weeks after its entry "[kept] its obliviousness slightly behind the willful line as it has been drawn by the Second Circuit" (quotation marks omitted)); *In re FKF 3, LLC*, 501 B.R. 491, 502 (S.D.N.Y. 2013) ("[E]ven where notice was adequate and the defaulting party failed to rebut the presumption of receipt, if the party responded promptly after learning of the action, courts have found that the party's default was not willful." (citations omitted)).

To be sure, however, there are circumstances in this case that lend some support to a willfulness finding, particularly as to Bruwer. On March 13, 2023, the day that he was served with the Summons and Complaint, Bruwer sent an email to Ramus's counsel which made clear that Bruwer was aware of this litigation and, at least at that time, did not intend to present a defense: "I have no money to defend my company because it does not exist anymore. . . . So go do what you have to but I don't care or give a shit anymore." Akselrod Decl., Exh. G at 5; *see* Reply at 2. Yet, this email, which was rather lengthy, largely discussed the project at the Apartment and conveyed the dire financial and physical circumstances that Bruwer was facing. *E.g.*, Akselrod Decl., Exh. G at 5 ("I don't have any money left, I have no assets left, I have nothing. Bulson's debt is immense

and I am broke.  The last three years have been a living hell for me.  The [e]conomy, covid, no work and this project have ruined me."); *id.* (discussing medical issues that Bruwer and a relative were dealing with).  Ramus's counsel also has represented that, on April 27, 2023, about one week after serving Bruwer with the Order setting the default judgment briefing schedule, Bruwer told him that "he will not be hiring an attorney to represent him," Akselrod Decl. ¶ 22, although it is unclear whether this statement meant to convey that Bruwer intended to proceed *pro se* or to not defend the action.  In addition, on May 9, 2023, Metoyer sent an email to Ramus's counsel expressing confusion as to why he was named in this lawsuit, thus making clear that, at some point prior to sending that email, Metoyer too became aware of this litigation.  Dkt. 35-7 ("From the beginning of this I did not understand why I am named in this lawsuit.  I was an employee of Bulson Management LLC.  I had no power to make any decisions.  All financial actions came from Graham Bruwer."); *see also* Akselrod Reply Decl. ¶ 3 (declaration from Ramus's attorney observing that Metoyer's May 9, 2023 email "merely professes Defendant Metoyer's belief that he did nothing wrong").  But again, just over a week after Metoyer sent this email, and about three weeks after Bruwer's conversation with Ramus's attorney, an attorney appeared in this action representing both Metoyer and Bruwer to oppose default judgment.

Thus, while a close call, given the relatively brief period of time that Defendants failed to appear after being served and the immediate steps taken by counsel upon appearing, and being mindful that questions as to Defendants' willfulness should be resolved in their favor, *see Enron Oil Corp.*, 10 F.3d at 98; *Raheim*, 2007 WL 2363010, at *4, the Court does not find Defendants' default to be willful.

### 2. Prejudice to Ramus

Unlike the willfulness inquiry, the question of whether Ramus has shown prejudice does not present a close call, as he has failed to establish any prejudice for purposes of the good cause

analysis under Rule 55(c).  In this context, prejudice results when the delay causes "the loss of evidence, create[s] increased difficulties of discovery, or provide[s] greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil*, § 2699 at 536-37 (1983)).  Ramus bears the burden of demonstrating that "any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Patrick v. Local 51, Am. Postal Workers Union, AFL-CIO*, No. 19 Civ. 10715 (NSR), 2020 WL 2192682, at *4 (S.D.N.Y. May 6, 2020) (quoting *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12 Civ. 52 (JPO), 2013 WL 1809637, at *6 (S.D.N.Y. Apr. 30, 2013)).

There is no information, presented by Ramus or otherwise, to indicate that Defendants' relatively minor delay in appearing in this case has caused Ramus such prejudice.  Again, Defendants appeared within two weeks of Ramus's motion for a default judgment, and within 2.5 months of the initiation of this lawsuit.  Ramus asserts that he "has suffered significant damage as the result of the fraud perpetrated by the Defendants upon him," Reply at 3, and that he "has been forced to expend thousands of dollars in connection with this action," *id.* at 4.  Such purported injuries are insufficient, as they merely point to harm allegedly caused by Defendants' conduct prior to this litigation, which if proven can be rectified by resolving Ramus's claims on their merits, and by the general delay in Defendants' appearance in this case.  *See G&G Closed Circuit Events, LLC v. Shahzad*, No. 20 Civ. 7487 (JPC), 2021 WL 1163824, at *2 (S.D.N.Y. Mar. 26, 2021) ("[D]elay standing alone does not establish prejudice sufficient to defeat a motion to vacate a default." (internal quotation marks omitted)); *cf. Ningbo Mizhihe I&E Co., Ltd. v. Does 1-200*, No. 19 Civ. 6655 (AKH), 2019 WL 6841995, at *4 (S.D.N.Y. Dec. 16, 2019) ("[I]t is true that such expenses can amount to prejudice in some circumstances.  However, if the Court later determines that attorneys' fees and costs should be granted to Plaintiff, it will so order payment thereof." (citation

omitted)); *Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007) ("The incurrence of these costs [of moving for a default judgment] does not establish prejudice. Nor does mere delay, without more, constitute prejudice." (citation omitted)).

### 3. Defendants' Meritorious Defenses

Lastly, Defendants have demonstrated that they have meritorious defenses. "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co.*, 92 F.3d at 61. Rather, Defendants must show that "the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98; *accord Green*, 420 F.3d at 109. This is a "very low" threshold. *See e.g.*, *Vedder Price P.C. v. US Cap. Partners, LLC*, No. 16 Civ. 6787 (JPO), 2017 WL 4180021, at *3 (S.D.N.Y. Sept. 20, 2017).

Initially, both Defendants have made clear in their declarations that they "intend to vigorously defend against the allegations made against [them]." Bruwer Decl. ¶ 13; Metoyer Decl. ¶ 19. Further, as a threshold matter, it is far from clear that this dispute should proceed in this Court. Defendants point to a provision in the Agreement between Ramus and Bulson, which suggests that disputes concerning the renovation project at the Apartment belong in mediation or arbitration:

> **§ 17.2** The parties shall endeavor to resolve their disputes by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with their Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to this Agreement, and filed with the person or entity administering the mediation. The request may be made concurrently with the binding dispute resolution but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

> **§ 17.3** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any claim, subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association, in accordance with the Construction Industry Arbitration Rules in effect on the date of the Agreement.

> Demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Agreement §§ 17.2, 17.3; *see Cordero v. AT&T*, No. 15 Civ. 5601 (RRM), 2017 WL 52591, at *4 (E.D.N.Y. Jan. 4, 2017) ("[A]greements to arbitrate have been found to provide a meritorious defense that, if established, would constitute a complete defense to the lawsuit." (internal quotation marks omitted)). And as noted, Ramus has in fact commenced proceedings before the AAA against Bulson relating to the dispute over the performance of the renovation project at the Apartment.

Moreover, even if this Court were to not compel mediation and arbitration, and reach the merits of the underlying dispute, Defendants have articulated a meritorious defense that Ramus did not comply with the contract. *See* Opposition at 9. In their declarations, each Defendant has previewed some of the bases for this defense, including that Ramus delayed in making decisions essential for the completion of the work at the Apartment and that if Ramus had made all payments due under the Agreement, Bulson would have been able to pay its subcontractors. Bruwer Decl. ¶¶ 14, 23; Metoyer Decl. ¶¶ 20, 28.

Of course, this is not to suggest that these arguments ultimately will prevail. But Defendants have meritorious defenses to present, and the Court will allow them to do so.

* * *

In sum, given these circumstances and the strong preference for resolving disputes on the merits, *see Enron Oil Corp.*, 10 F.3d at 95, the Court will not allow Ramus to circumvent a resolution of his claims on their merits via the default judgment procedure. The Court therefore denies Ramus's motion for a default judgment as to Bruwer and Metoyer, and further vacates the certificates of default as to those Defendants.

### B. Defendants' Cross-Motion to Compel Arbitration

As noted, in opposing Ramus's default judgment motion, Defendants also purport to cross-move for the Court to compel mediation or arbitration. *See* Opposition at 2-8. That motion is denied without prejudice. Initially, the motion is procedurally flawed as Defendants have not filed a notice of motion as required by Local Civil Rule 7.1(a)(1). Nor did Defendants file a pre-motion letter in advance of filing their cross-motion as required by Rule 6.A of the undersigned's Individual Rules. *See* https://www.nysd.uscourts.gov/hon-john-p-cronan. Further, in opposing the cross-motion, Ramus argues that the arbitration clause cannot be enforced because, *inter alia*, "Defendants waived arbitration by defaulting in this action." Reply at 10. Given the Court's denial of Ramus's motion for a default judgment and vacatur of the notations of default, Ramus should be afforded the opportunity to consider whether he still opposes a motion to compel and, if so, to fully present his arguments for such opposition.

### III. Conclusion

For the reasons stated above, Plaintiff Joshua Ramus's motion for a default judgment is denied, and the certificates of defaults as to Defendants Graham R. Bruwer and Gerard E. Metoyer are vacated. Defendants' cross-motion to compel arbitration is denied without prejudice. The Court will hold a status conference on April 9, 2024, at 11:30 a.m. in Courtroom 12D at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. At that appearance, Ramus should be prepared to address whether his Complaint has sufficiently alleged subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[6] In addition, Defendants should be

---

[6] The Complaint alleges that diversity of citizenship exists because Ramus "is an individual temporarily residing at 53 Park Place, Unit 9I, New York, New York," Complaint ¶ 1, Bruwer "is an individual residing at 151 Cumberland Road, Glendale, California," *id.* ¶ 2, and Metoyer "is an individual residing at 6003 Monroe Place, Apt. 5D, West New York, New Jersey," *id.* ¶ 3. However, "residence alone is insufficient to establish domicile for jurisdictional purposes." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)); *accord Canedy v. Liberty Mut. Ins.*

prepared to address whether they intend to renew their motion to compel mediation or arbitration and, if so, Ramus should be prepared to address whether he intends to oppose such motion.

The Clerk of the Court is respectfully directed to terminate the motion pending at Docket Number 22.

SO ORDERED.

Dated: March 15, 2024
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

*Co.*, 126 F.3d 100, 103 (2d Cir. 1997) ("[I]t is well-established that allegations of residency alone cannot establish citizenship . . . .").